Birchard, C. J.
This proceeding was authorized by the legislature in order to obtain the opinion of this court as to the duty of the state, in reference to certain riparian proprietors using hydraulic privileges on certain streams of fresh water, navigable under the provisions of the ordinance of 1787, and which have been declared navigable by sundry statutes.
This is evident from the preamble to the resolutions: “ Whereas, doubts have been entertained whether riparian proprietors on the navigable rivers of the state are in good faith entitled to remuneration from the state on account of deterioration of the value of their investments in hydraulic purposes on such rivers, to settle such doubts,” etc.
In disposing of this subject, it is well in the first instance to consider what are the respective rights of the public and riparian owners in the streams within our borders, which are in fact navigable. The question is not new in this state. It has been repeatedly before this court, and the rule is this: Ho who owns the land on both banks of such river owns the entire river, subject only to the easement of navigation, and *he who owns the land upon one bank only, owns to the middle of the main channel, subject to the same easement. The right of the public is merely the right to use the water within the channel for the purposes of navigation. The proprietor of the lands upon its banks may use the waters, of the river in any way not inconsistent with the public easement, or of private rights, and neither the state nor any individual has the right to divert the water to his *457 injury. The right of the adjacent proprietor to the water of the stream is a usufruetory right, appurtenant to the freehold, not an absolute property. Hence the state, in its exercise of the right of eminent domain, can subject the waters of such stream to other public uses the same as any other pi’ivate property, by making a just compensation for the injury, and not otherwise. Gavitt v. Chambers, 3 Ohio, 495; Commissioners Land Fund v. Kempshall, 26 Wend. 404; Rules of the Chancellor of Now York in 17 Wend. 571.
There is another matter to be considered before we come to the questions arising upon the pleadings, viz: the effect of a statute declaring an unnavigable stream to be navigable. It is worthy of remark, that in all the statutes of this description, enacted hitherto in Ohio, no provision is made for compensating the owners of the land, through which such small streams flow, for any injury which may accrue in consequence of thus converting their private property into public highways. There is no provision made for the purchase of the easement thus dedicated to the public use, or attempted to be created for the public use. Yet prior to the passage of these acts, the owners of the lands on both banks of such streams owned the streams and the right to use the water flowing in them, in any manner consistent with the rights of persons above and below them, without let or hindrance. They might erect dams or other obstructions to direct the water from the bed of the stream to. any point of their premises, returning it to its natural channel after using it at their pleasure or convenience. A right of this desrription is a right of property within the protection of the constitution, *and that can not be impaired by a legislative enactment which provides no compensation to the proprietor for the injury. It follows from these principles, that a mill-dam belonging to these relators was erected by authority of law. It was such a structure as the owner of the soil might erect without the aid of. any statute, and in opposition to the prohibition of the statute declaring that portion of the. Great Miami navigable. The common law sanctions it, and conferred the power to build the mill and use the water, while no binding statute forbade the act. The plea avers that the stream at the point of erection was never subject to the easement of navigation. The demurrer admits the facts well pleaded, and as we shall hereafter see admits this fact. The relators have, therefore, in the *458 words of the preamble, “in good faith,” and in law, a clear right to demand of the state full compensation for all the injury to them occasioned by the diversion of the waters of the Great Miami from its natural channel.
It remains for us to consider only whether they have made a case within the resolution of March 12, 1845. 43 Local L. 456. The first resolution gives to the owners of land on the banks of any navigable river, who have erected dams across such river, and upon which dams for hydraulic purposes have been authorized, etc., the right to institute this proceeding. The Great Miami is declared, by sundry acts of the legislature, to be a navigable river. The legislature, by those acts, has shown what were its views of this stream, and from that we may infer what its meaning was, when speaking of navigable rivers in these resolutions.
We ought to understand the same words “navigable rivers,” when employed in different acts by the same body, to mean the same thing. In these resolutions, “ navigable rivers” should be considered for the purpose of interpretation and construction, as defined by the statutes declaring this stream navigable. Those statutes show what these words mean as used here, and we want no better exposition of what our own legislature means, when speaking of a “ navigable river’.” *It is a stream, great or small, which they have thus christened. By an exercise of the legislative power, the state says the Great Miami is navigable at, above, and below the mill-dam of the relators; and although we deny to the legislature the power to change the private rights of the riparian proprietor by so doing, yet for all other purposes consistent with the provisions of the constitution, the statutes should be sustained—more especially, to enable us to carry into effect subsequent legislative action, according to the true meaning and intention of the general assembly. But we are not required to hold that the mill-dam of the relators must have been built pursuant to these special statutes, and with a slope for the passage of boats, even if the Great Miami was in fact navigable at that point, and subject to a public easement. The resolution does not restrict the intended relief to those owners of dams, where dams were built pursuant to the provisions of either the special statutes or the rules of the common law. It is given to those owners, who have erected dams across “navigable rivers,” and upon which ^rivers'] dams for hydraulic purposes have been authorized by law. *459 The relative which, relates to rivers, not to the word dam. This is the grammatical construction of the sentence, and this reading of the resolution is precisely what it should be, if the object of the state was to render to the riparian owners exact justice, of which object there can be no doubt. Eor if an owner had constructed and continued a dam for hydraulic purposes, without providing for the passage of boats as required by the statutes, that would furnish no good reason why the state authorities should divert from the channel of the river, and deprive him of the right which he had to use its waters, without compensating him. It might subject him to the penalties provided by the statute. It might afford a reason for abating his dam as a nuisance, but nothing more. If a nuisance, the fact would tend to lessen the damages which he might claim, and would not be a reason for denying them altogether.
How then stands the issues, when tided by the foregoing *rules, and the well-known rules of pleading? The demurrer to the plea reaches the first defect in the pleading. If the answer sets forth a valid defense, and the plea is bad, then the demurrer is well taken ; but if the answer is insufficient the demurrer is not well taken, because a bad plea is sufficient, if the answer is defective. The gist of the answer of tho board of public works is, “that the waters of the Great Miami have been used by Walker & Fxdton for hydraulic purposes, by means of a dam not authorized by law, and which is and has been from its erection an unlawfxil obstruction to the navigation of said river, and a public nuisance." In other words, your dam was a nuisance, ergo, you had no righ t to the waters of the river. This is not sufficient to bar the relators’ claim, and we need not further consider the plea.
Demurrer overruled ; mandamus peremptory ordered.